JAMES J. PISANELLI (Nevada Bar No. 4027)
JJP@pisanellibice.com
TODD L. BICE (Nevada Bar No. 4534)
TLB@pisanellibice.com
DEBRA L. SPINELLI (Nevada Bar No. 9695)
DLS@pisanellibice.com
PISANELLI BICE
400 South 7th Street, Suite 300
Las Vegas, NV 89101
Tel: 702.214.2100

BRAD D. BRIAN (Pro Hac Vice)
brad.brian@mto.com
MICHAEL R. DOYEN (Pro Hac Vice)
michael.doyen@mto.com
BETHANY W. KRISTOVICH (Pro Hac Vice)
bethany.kristovich@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100 / Fax: (213) 687-3702

E. STRATTON HORRES, JR. (Pro Hac Vice Forthcoming)
Stratton.Horres@wilsonelser.com
KAREN L. BASHOR, (Nevada Bar No. 11913)
Karen.Bashor@wilsonelser.com
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
300 South Fourth Street, 11th Floor
Las Vegas, Nevada 89101-6014
Tel: 702.727.1400 / Fax: 702.727.1401

Attorneys for MGM RESORTS INTERNATIONAL,
MANDALAY RESORT GROUP, MANDALAY BAY, LLC,
MGM RESORTS FESTIVAL GROUNDS, LLC, and MGM
RESORTS VENUE MANAGEMENT, LLC

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| MGM RESORTS INTERNATIONAL, MANDALAY RESORT GROUP, MANDALAY BAY, LLC, MGM RESORTS FESTIVAL GROUNDS, LLC, and MGM RESORTS VENUE MANAGEMENT, LLC,<br><br>        Plaintiff,<br><br>     vs.<br><br>CARLOS ACOSTA, et al.,<br><br>        Defendant. | Case No. 2:18-cv-01288-APG-PAL<br><br>**MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT SEEKING DECLARATORY RELIEF** |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION...................................................................................................1

II.   STATEMENT OF FACTS......................................................................................3

      A.    Hundreds Sue MGM in the Wake of the One October Tragedy.................3

      B.    Congress, Through the SAFETY Act, Provided Federal Courts with
            "Original and Exclusive Jurisdiction" over Defendants' Claims...............4

      C.    CSC .............................................................................................................6

III.  LEGAL STANDARD .............................................................................................6

IV.   ARGUMENT ..........................................................................................................7

      A.    Defendants' Past Lawsuits Against MGM and Threat to File Thousands of
            Lawsuits in the Future Establish the Existence of a Case or Controversy.................7

      B.    The Remainder of Plaintiffs' Arguments Are Premised on Their
            Assumption that the SAFETY Act Does Not Apply....................................9

            1.    *Brillhart* Abstention Cannot Apply When Congress Has Vested
                  Federal Courts With Exclusive Jurisdiction Over a Claim ...........10

            2.    Even if *Brillhart* Abstention Applied, the Pertinent Factors Weigh in
                  Favor of Exercising Jurisdiction ..................................................11

            3.    There Is Nothing Unfair About MGM Seeking Declaratory Relief in
                  Federal Court Where Congress Granted Federal Courts "Original
                  and Exclusive Jurisdiction" over Such Claims .............................17

      C.    Should the Court Find MGM's Complaint Fails to Establish Subject-Matter
            Jurisdiction, MGM Requests Leave to Amend to Cure Any Deficiency.................19

V.    CONCLUSION ....................................................................................................19

MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT SEEKING DECLARATORY RELIEF

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**FEDERAL CASES**

*Aetna Health Inc. v. Davila,*
   542 U.S. 200 (2004) ..........................................................................................10, 18

*Aetna Life Ins. Co. v. Haworth,*
   300 U.S. 227 (1937) ........................................................................................................7

*Am. Cas. Co. of Reading, Penn. v. Krieger,*
   181 F.3d 1113 (9th Cir. 1999)......................................................................................14

*Am. States Ins. Co. v. Kearns,*
   15 F.3d 142 (9th Cir. 1994)......................................................................................6, 15

*Ansley v. Ameriquest Mortg. Co.,*
   340 F.3d. 858 (9th Cir. 2003) ......................................................................................10

*Augustine v. United States,*
   704 F.2d 1074 (9th Cir. 1983).......................................................................................6

*Biotics Research Corp. v. Heckler,*
   710 F.2d 1375 (9th Cir. 1983).......................................................................................7

*Bitter v. Windsor Sec., LLC,*
   No. 13-cv-05022–WHO, 2014 WL 1411219 (N.D. Cal. Apr. 11, 2014)..............9, 16

*Brillhart v. Excess Ins. Co. of Am.,*
   316 U.S. 491 (1942) ........................................................................................ 10, passim

*Carlin Equities Corp. v. Offman,*
   No. 07 civ. 359(SHS), 2007 WL 2388909, at *4 (S.D.N.Y. Aug. 21, 2007)............11

*Chang v. Chen,*
   80 F.3d 1293 (9th Cir. 1996), *overruled on other grounds, Odom v. Microsoft*
   *Corp.*, 486 F.3d 541 (9th Cir. 2007).........................................................................19

*Cohens v. Virginia,*
   19 U.S. 234 (1821) .......................................................................................................10

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.,*
   591 F.3d 1337 (11th Cir. 2009).....................................................................................18

*Cont'l Cas. Co. v. Coastal Sav. Bank,*
   977 F.2d 734 (2d Cir. 1992)........................................................................................16

*Cunningham Brothers, Inc. v. Bail,*
   407 F.2d 1165 (7th Cir. 1969.)................................................................................17, 18

# TABLE OF AUTHORITIES
(Continued)

**Page**

*England v. La. Bd. of Med. Examiners*,
  375 U.S. 411 (1964) ...................................................................................................10

*Freeclesunnyvale v. Freecycle Network, Inc.*,
  No. C 06-00324, 2006 WL 870688 (N.D. Cal. Apr. 4, 2006).......................................9

*Gov't Employees Ins. Co. v. Dizol*,
  133 F.3d 1220 (9th Cir. 1998)..............................................................................14, 15

*Great Am. Ins. Co. v. Berl*,
  No. CV 17-03767 SJO, 2017 WL 7667243 (C.D. Cal. Oct. 23, 2017).......................14

*Himonic, LLC v. Ting Pong Chow*,
  Case No. 2:17-cv-03023-MMD-NJK, ECF No. 15 (D. Nev. Aug. 6, 2018) ...............17

*Keown v. Tudor Ins. Co.*,
  621 F. Supp. 2d 1025 (D. Haw. 2008) .......................................................................13

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*,
  312 U.S. 270 (1941) .....................................................................................................7

*McCarthy v. United States*,
  850 F.2d 558 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989) .............................6

*Md. Cas. Co. v. Witherspoon*,
  993 F. Supp. 2d 1178 (C.D. Cal. 2014) ......................................................................13

*Medical Assur. Co., Inc. v. Hellman*,
  610 F3d 371 (7th Cir. 2010)........................................................................................14

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)...................................................................................................7, 8

*Newcal Indus., Inc. v. IKON Office Solution*,
  513 F.3d 1038 (9th Cir. 2008).......................................................................................9

*Pilot Life Ins. Co. v. Dedeaux*,
  481 U.S. 41 (1987) ......................................................................................................18

*Prasco, LLC v. Medicis Pharm. Corp.*,
  537 F.3d 1329 (Fed. Cir. 2008) .....................................................................................9

*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996) ....................................................................................................10

*Sabre Oxidation Techs., Inc. v. Ondeo Nalco Energy Servs. LP.*,
  No. Civ.A. H-04-3115, 2005 WL 2171897 (S.D. Tex. Sept. 6, 2005) .......................11

iii

# TABLE OF AUTHORITIES
(Continued)

**Page**

*Seattle Audubon Soc'y v. Moseley*,
   80 F.3d 1401 (9th Cir. 1996) (per curiam) ............................................................3, 6

*Societe de Conditionnement en Aluminium v. Hunter Engineering Co., Inc.*,
   655 F.2d 938 (9th Cir. 1981) ..............................................................................9

*United Ins. Co. of Am. v. Harris*,
   939 F. Supp. 1527 (D. Ala. 1996) .......................................................................18

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) .........................................................................................11

STATE CASES

*Commonwealth v. Peterson*,
   749 S.E.2d 307 (Va. 2013) ................................................................................13

*Lopez v. McDonald's Corp.*,
   193 Cal. App. 3d 495 (1987) .............................................................................12

*Mayfield v. MGM Resorts Int'l*,
   No. BC 687120 (Cal. Super Ct. Dec. 15, 2017) ......................................................8

*Romero v. Giant Stop-N-Go of N.M., Inc.*,
   212 P.3d 408 (N.M. Ct. App. 2009) ....................................................................12

*Spencer v. Paddock*,
   No. BC680065 (Cal. Super. Ct. Oct. 17, 2017) ...................................................7, 8

*Wiener v. Southcoast Childcare Ctrs., Inc.*,
   32 Cal. 4th 1138 (2004) ...................................................................................12

FEDERAL STATUTES

6 U.S.C. §§ 441–444 (Support Anti-Terrorism by Fostering Effective Technologies
   Act of 2002, "SAFETY Act") ................................................................... 1, passim

28 U.S.C. § 2201(a) (the "Declaratory Judgment Act") ...................................6, 7, 16, 18

29 U.S.C. § 18 ("ERISA") .............................................................................10, 18

15 U.S. Code § 78a ("Securities Exchange Act") ...................................................11

FEDERAL RULES

Rule 12 ..................................................................................................6, 9

MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT SEEKING DECLARATORY RELIEF

**TABLE OF AUTHORITIES**
(Continued)

**Page**

**FEDERAL REGULATIONS**

6 C.F.R. § 25.7 ............................................................................................2, 17

71 Fed. Reg. 33147-01, 33148, 33154 (June 8, 2006) ...............................4

**LEGISLATIVE MATERIALS**

148 Cong. Rec. 14,970 (2002) .....................................................................5

148 Cong. Rec. 14,982 (2002) ........................................................ 2, passim

148 Cong. Rec. 22,957 (2002) ...................................................................18

H.R. Rep. No. 107-609 (2002) ....................................................................4

**OTHER AUTHORITIES**

*Moore's Federal Practice and Procedure - Civil* § 101.75 (2007)....................6

MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT SEEKING DECLARATORY RELIEF

1    Plaintiffs MGM Resorts International, Mandalay Resort Group, Mandalay Bay, LLC,

2  MGM Resorts Festival Grounds, LLC, and MGM Resorts Venue Management, LLC (together,

3  "MGM") respectfully oppose Defendants' Motion to Dismiss.

4  **I.    <u>INTRODUCTION</u>**

5    MGM has been sued by more than 600 people claiming injuries from Stephen Paddock's

6  attack on the Route 91 Festival, including many of the Defendants in this action.  Thousands more

7  sent MGM letters, through their counsel, announcing their intent to do the same.

8    Because a company certified by the Department of Homeland Security provided security at

9  the Festival, MGM is entitled to the protections of the federal SAFETY Act.  The SAFETY Act

10  creates exclusive federal jurisdiction and an exclusive federal claim for injuries arising from an

11  event where certified services were deployed, and plaintiffs cannot establish such a claim against

12  MGM arising from the shooting.  MGM seeks a declaratory judgment that the SAFETY ACT

13  applies to Defendants' claims against MGM and bars Plaintiffs' claims.

14    MGM seeks a declaration of its rights under federal law as to actions and claims over

15  which the federal courts have "original and exclusive jurisdiction."  6 U.S.C. § 442(a)(2).

16  Specifically, MGM seeks a declaration under the SAFETY Act's comprehensive framework for

17  resolving claims relating to acts of mass violence where DHS-certified services were deployed

18  that:

19      • Defendants' claims arising from Paddock's attack are subject to and governed by
           the SAFETY Act; and
20

21      • The SAFETY Act precludes any finding of liability against MGM for any claim for
           injuries arising out of or related to Paddock's mass attack.
22

23  (First Amended Complaint, Prayer for Relief, ECF No. 253 (hereafter "FAC").)

24    In their motion, Defendants argue that there is not a sufficient case or controversy, and

25  they make numerous other arguments related to their "state law" claims.  Notably, however,

26  *Defendants do not contest that the SAFETY Act applies*.  (ECF No. 428, p. 6, n.3.)  Instead, they

27  purport to reserve that question for later briefing. Their arguments, though, aside from the

28  argument that there is no case or controversy, all presume that the SAFETY Act does *not* apply.

Defendants cannot obtain dismissal on the mere assumption that this court does not have "exclusive" jurisdiction over the issues here presented. Having determined that there is a sufficient case or controversy – a matter beyond serious dispute – the Court can dispense with the remainder of the arguments as contrary to the fundamental rule that well-pled and unchallenged contentions are accepted as true.

Defendants' contention that there is no "case or controversy" is impossible to square with the fact that hundreds of people – including many Defendants in this action – have *already* sued MGM claiming it is liable for alleged security failures at the festival and the fact that thousands more have threatened to do so.  Indeed, Defendants allege in their motion to dismiss that MGM's supposed negligence caused their injuries.  This dispute is anything but abstract or hypothetical.  It is both present and real.

Defendants also argue that, even if a case or controversy existed, it would be inappropriate for a federal court to exercise jurisdiction over "state law" matters.  But Congress intended and provided otherwise: Congress gave this court "original and *exclusive*" jurisdiction over "all actions" and "any claim" for injuries "arising out of, relating to, or resulting from" acts of mass violence where DHS-certified services were deployed, including claims that arose out of state law. 6 U.S.C. § 442(a)(1)–(2) (emphasis added).  Congress created a federal cause of action for injuries arising out of such an event and expressly provided that this federal cause of action would incorporate state law.  6 U.S.C. § 442(a)(2); 6 C.F.R. § 25.7(d).  Congress made clear that in the event of such a tragedy, it intended to "provide a consolidation of claims *in Federal court*." 148 Cong. Rec. 14,982 (2002) (Rep. Armey) (emphasis added).

In sum, not only may federal courts properly exercise jurisdiction over such actions and resolve related state law issues, they *must* do so.  Congress provided that the federal courts are the *only* forum where such actions may be heard.

Finally, Defendants argue it would be unfair for this Court to issue declaratory relief in MGM's favor because they wish to assert their personal injury claims only under state law.  That argument should be addressed to Congress:  Congress determined that it served the national

MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT SEEKING DECLARATORY RELIEF

interest to provide that all such actions must be (1) brought under federal law, which adopts state-law principles, and (2) heard exclusively in federal court.

MGM seeks a declaration of its rights under federal law, The Declaratory Judgment Act permits would-be defendants to "avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in **one action** the rights and obligation[s] of the litigants." *Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (per curiam) (emphasis added). The Court should do so here.

## II.   STATEMENT OF FACTS

On October 1, 2017, Stephen Paddock broke out the thick double-layered wall of glass in his hotel room and rained fully automatic gunfire on over 10,000 people attending the Route 91 Harvest country music festival a quarter mile away. He killed 58 and wounded hundreds more. Neither the police nor the FBI has identified a motive. He gave no warning and left no message other than the mass carnage he deliberately inflicted. (*See generally* FAC ¶¶ 1–6.)

### A.   Hundreds Sue MGM in the Wake of the One October Tragedy

In the wake of the tragedy, 634 people brought 38 individual lawsuits and one class action against MGM – which owns the Mandalay Bay hotel and the Village Lot, where the Route 91 Harvest festival took place. (Declaration of Bethany Kristovich ("Kristovich Decl."), ¶ 2.) MGM removed the personal injury class action to federal court, and plaintiffs' counsel immediately dismissed it. (Kristovich Decl. ¶ 3.) Plaintiffs' counsel dismissed many of the individual actions without prejudice, while making clear their intent to refile, and others sent letters making clear their threat to sue. (Kristovich Decl. ¶¶ 4–5, 11–12, Ex. 4 (schedule of actions filed and dismissed without prejudice), Ex. 5 (compilation of demand letters received by MGM).) One plaintiffs' attorney asserted that he expects *22,000* separate lawsuits to be brought against MGM. (Kristovich Decl. ¶ 13, Ex. 6.)

In June and July 2018, MGM removed the then-pending actions to federal court under the SAFETY Act, and filed actions for declaratory relief – including this one – against those individuals who had sued or threatened suit. MGM did so pursuant to the federal Support Anti-

3

1   Terrorism by Fostering Effective Technologies Act of 2002, better known as the "SAFETY Act."

2   6 U.S.C. §§ 441–444.

3          One hundred and sixty four of the Defendants in this action have already sued MGM.

4   (Kristovich Decl. ¶ 6.)  Counsel representing these individuals alleged explicitly, in these lawsuits,

5   that MGM was negligent both as to its hotel operations (by allegedly failing to prevent Paddock's

6   rampage) and festival-site operations (by allegedly failing to appropriately secure and evacuate the

7   premises); that MGM's negligence caused plaintiffs injuries; and that MGM is liable to these

8   individuals for the damages resulting from those injuries.  (*See* Section IV(A), *infra*.)  There is

9   nothing ambiguous or uncertain about these claims.  Counsel, many of whom filed these actions

10  against MGM, sent letters to MGM on behalf of the remaining Defendants purporting to have

11  claims against MGM.  (Kristovich Decl. ¶ 7.)  MGM has named as Defendants in this action only

12  the individuals who sued the Company or whose lawyers sent letters indicating their intent to sue.

13         **B.**    **Congress, Through the SAFETY Act, Provided Federal Courts with "Original
           and Exclusive Jurisdiction" over Defendants' Claims**

14

15         Congress enacted the SAFETY Act in 2002, mere months after the September 11 attacks.

16  Congress was concerned that insurance for acts of mass violence would be unavailable, and that

17  technologies and services designed to prevent and respond to mass violence would not be

18  developed or deployed in the face of unlimited liability.  Yet Congress also believed that private

19  innovation had to be "the Nation's front-line defense against the terrorist threat" and that "liability

20  protections" were critical to make sure these innovations were developed and deployed.  H.R. Rep.

21  No. 107-609, at 118 (2002); *see also* Final Rule Regulatory Comments, 71 Fed. Reg. 33147-01,

22  33148, 33154 (June 8, 2006) ("The purpose of the Act is to ensure that the threat of liability does

23  not deter companies from designing, developing or deploying effective anti-terrorism

24  technologies."); 6 U.S.C. § 441(b)(4) ("The Secretary may designate anti-terrorism technologies

25  that qualify for protection [if among other criteria there is a] [s]ubstantial likelihood that *such anti-*

26  *terrorism technology will not be deployed unless protections under the system of risk management*

27  *provided under this part are extended.*") (emphasis added).

28

MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT SEEKING DECLARATORY RELIEF

1    Congress therefore gave the new Department of Homeland Security authority to certify

2   technologies and services as appropriate to prevent and respond to mass violence, and it also

3   created a statutory scheme intended to ensure that private companies would not be deterred from

4   entering the security business – and that companies such as MGM would not be deterred from

5   sponsoring public events such as the Festival.  To achieve these objectives Congress :  (a)

6   provided exclusive federal jurisdiction; (b) provided an exclusive federal cause of action; (c)

7   required qualified Sellers to have insurance to cover possible claims; and (d) imposed various

8   limitations on liability, including no punitive damages.

9    In the plain words of the statute, the SAFETY Act created a "[f]ederal cause of action for

10   claims arising out of [or] relating to" an act of mass violence where certified services were

11   deployed and where such claims may result in losses to the Seller of the services.  (FAC ¶ 13); 6

12   U.S.C. § 442(a)(1).  And the SAFETY Act vested federal courts with "original and exclusive

13   jurisdiction over "all actions" and "any claim" for loss" arising out of or related to such an attack.

14   (FAC ¶ 14); 6 U.S.C. § 442(a)(2).   As its sponsor in the House explained, the SAFETY Act

15   "provide[s] *a consolidation of claims in Federal court* to stop venue shopping."  148 Cong. Rec.

16   14,982 (2002) (Rep. Armey); *see also* 148 Cong. Rec. 14,970 (2002) (Rep. Pryce) (explaining that

17   the statute's "litigation management provisions … simply provide for … [a] consolidation of

18   claims in Federal Court" and "[t]hat makes perfect sense").

19    These thousands of actions filed and threatened arising out of the attack in Las Vegas

20   implicate the very concerns Congress addressed in the SAFETY Act: that no one could take the

21   risk of seeking to protect American public life if faced with the possibility of unlimited liability in

22   the aftermath of an act of intentional mass violence.  Defendants propose to blame Paddock's

23   attack on MGM – with punitive damages to boot.  Congress rejected that approach.  As

24   Congressman Armey explained, everyone is affected by indiscriminate violence – including

25   owners and operators of businesses – and the statute "takes a sort of simple practical American

26   notion that if someone is a victim, they should not be treated as if they were a perpetrator."  148

27   Cong. Rec. 14,982.  The SAFETY Act reflects a carefully calibrated balance of insurance and

28

MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT SEEKING DECLARATORY RELIEF

1  limitations on liabilities arising from mass attacks committed on U.S. soil where services certified

2  by the Department of Homeland Security were deployed.  6 U.S.C. §§ 441–444.

3       **C.      CSC**

4       Contemporary Services Corporation is one of the nation's leading venue security firms. It

5  has provided security for Super Bowls, Presidential inaugurations and music concerts and

6  festivals.  CSC sought and obtained DHS certification of its event security services.  (Kristovich

7  Decl. ¶ 16, Exs. 8–9.)  MGM and its co-promoter, Live Nation, tapped CSC to provide security for

8  the Route 91 Festival.  (*Id.*)  Because MGM retained CSC for security at the concert, and because

9  claimants allege injuries resulting from supposed security failures at the concert, the SAFETY Act

10 governs all actions and any claim for injury relating to Paddock's attack.  (FAC ¶¶ 762–783.)

11 **III.     LEGAL STANDARD**

12      The Declaratory Judgment Act authorizes federal courts to "[i]n a case of actual

13 controversy, . . . declare the rights and other legal relations of any interested party seeking such

14 declaration." 28 U.S.C. § 2201(a).  The Declaratory Judgment Act permits would-be defendants

15 to "avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for

16 declaring in ***one action*** the rights and obligation[s] of the litigants." *Seattle Audubon Soc'y*, 80

17 F.3d at 1405 (per curiam) (emphasis added).

18      Before rendering declaratory relief, the Court must first decide whether "there is a case of

19 actual controversy within its jurisdiction." *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143

20 (9th Cir. 1994).  "The point at which an issue becomes sufficiently concrete and real to constitute

21 a case or controversy as opposed to an abstract or hypothetical situation can be more a matter of

22 intuition and reason than a rigid application of a definitive standard." *Moore's Federal Practice*

23 *and Procedure - Civil* § 101.75 (2007).

24      On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court may

25 review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the

26 existence of an actual controversy between the parties. *McCarthy v. United States*, 850 F.2d 558,

27 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *see also Augustine v. United States*, 704

28 F.2d 1074, 1077 (9th Cir. 1983) ("In ruling on a challenge to subject matter jurisdiction, the

6

1   district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue

2   prior to trial, resolving factual disputes where necessary.").  Consideration of materials outside the

3   pleadings does not convert a 12(b)(1) motion into one for summary judgment.  *Biotics Research*

4   *Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983).

5   **IV.**   **ARGUMENT**

6       **A.**   **Defendants' Past Lawsuits Against MGM and Threat to File Thousands of**
        **Lawsuits in the Future Establish the Existence of a Case or Controversy**

7

8          To satisfy the "actual controversy" requirement of the Declaratory Judgment Act, the

9   dispute must be "'definite and concrete, touching the legal relations of parties having adverse legal

10  interests'; and [must] be 'real and substantial' and 'admi[t] of specific relief through a decree of a

11  conclusive character, as distinguished from an opinion advising what the law would be upon a

12  hypothetical state of facts.'"  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)

13  (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)).  There is no bright-line rule for

14  determining whether the case-or-controversy requirement is satisfied.  *Id.*  "'Basically, the

15  question in each case is whether the facts alleged, under all the circumstances, show that there is a

16  substantial controversy, between parties having adverse legal interests, of sufficient immediacy

17  and reality to warrant the issuance of a declaratory judgment.'"  *Id.* (quoting *Maryland Cas. Co. v.*

18  *Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

19         Here, 164 of the Defendants have *already* sued MGM, claiming that MGM is liable for

20  injuries relating to the shooting.  (Kristovich Decl. ¶ 6.)  Lawyers, including those who filed those

21  suits, sent MGM letters purporting to represent an additional 2,278 claimants, including the

22  remainder of the Defendants in this action.  (Kristovich Decl. ¶ 7.)

23         The Defendants who have actually commenced – and subsequently dismissed – litigation

24  allege, among other things, that:

25         • "As a result of Defendant MGM and Mandalay [Bay]'s negligence and gross

26             negligence, Defendant Paddock was able to perpetrate the deadliest mass shooting

27             in U.S. history …."  Complaint, *Spencer v. Paddock*, No. BC680065 (Cal. Super.

28             Ct. Oct. 17, 2017) at ¶¶ 21, 22, 55–56, 57 (Kristovich Decl. ¶ 8, Ex. 1);

7

- "As a result of Defendant MGM, Mandalay, Live and One Nation's negligence and gross negligence in failing to have an adequate exit plan at the Village and the Festival, numerous attendees were unable to safety exit the Village resulting in deaths and injuries." *Id.* at ¶ 22.

- "As a direct and proximate result of Defendants['] … conduct, Plaintiffs were assaulted and battered while on the premises of the Village, causing severe injuries to Plaintiffs ….  Plaintiffs have suffered extreme emotional distress  … Plaintiffs were required to obtain medical services and treatment, and suffered general and special damages in an amount to be determined at trial." *Id.* at ¶ 55–57.

- "As a direct and proximate result of the Venue Defendants negligence [plaintiffs] were shot … [and]  Plaintiff Attendees suffered serious injuries and damages, including, but not limited to, past and future medical expenses, past and future pain and suffering, past and future severe emotional distress, past and future loss of income, loss of earning capacity, and other economic and non-economic damages …." Complaint, *Mayfield v. MGM Resorts Int'l*, No. BC 687120 (Cal. Super Ct. Dec. 15, 2017) at ¶¶ 164, 169, 174, 177, 181–182 (Kristovich Decl. ¶ 10, Ex. 3).

With the opportunity and incentive to say now that they are not really certain plaintiffs are liable, Defendants have chosen instead to repeat their claims: They assert *in their motion to dismiss* that "MGM's negligence" allowed Paddock to "carry out his attack on the Route 91 Harvest Music Festival."   (Defs' Mem. ISO MTD at 4-5, ECF No. 428.)

The fact that many of these Defendants filed actual lawsuits seeking to hold MGM responsible for the injuries inflicted by Paddock, and the fact that many others sent letters threatening such litigation demonstrates a "substantial controversy" between the parties as to MGM's liability for injuries caused by Stephen Paddock's rampage. *See MedImmune, Inc.*, 549 U.S. at 127.  The fact that Defendants dismissed many of these lawsuits is immaterial.  Defendants do not deny their intent to refile – and the fact that Defendants' counsel apparently favor prosecuting lawsuits on behalf of a few claimants at a time, so that a loss is not binding on any other claimants, is immaterial.  The law is clear that even the "threat" of suit is enough to create

MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT SEEKING DECLARATORY RELIEF

1   standing for a declaratory judgment claim.  *See Newcal Indus., Inc. v. IKON Office Solution*, 513

2   F.3d 1038, 1056 (9th Cir. 2008) ("[T]he threat of suit is enough to create standing, such that the

3   threatened party may seek a declaration that the threatening party's putative rights are invalid.")

4   (citing *Societe de Conditionnement en Aluminium v. Hunter Engineering Co., Inc.*, 655 F.2d 938

5   (9th Cir. 1981)); *Freecyclesunnyvale v. Freecycle Network, Inc.*, No. C 06-00324, 2006 WL

6   870688, at *4 (N.D. Cal. Apr. 4, 2006) (a real and reasonable apprehension of litigation was

7   created by a letter that "implie[d] a harsh response for failure to cease usage," even though a

8   lawsuit was not threatened); *Bitter v. Windsor Sec., LLC*, No. 13-cv-05022–WHO, 2014 WL

9   1411219, at *4 (N.D. Cal. Apr. 11, 2014) (finding a case or controversy existed where a demand

10  letter communicated carried the "clear implication" that one party "believed it had enough

11  evidence to take legal action" against the other); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d

12  1329, 1341 (Fed. Cir. 2008) (prior litigious conduct is relevant in determining the existence of a

13  case or controversy).  Where individual claimants have disclaimed any present intent to pursue a

14  claim, MGM has dropped its claim for declaratory relief.  (Kristovich Decl. ¶ 14.)

15      Despite the fact that a defendant is permitted to submit evidence in support of a Rule

16  12(b)(1) motion, Defendants here have not submitted any declaration denying or withdrawing the

17  imminent threat of suit or disavowing their intent to sue MGM.  The law is clear that the threat of

18  suit, which plainly exists here, creates an actual controversy that supports a declaratory judgment

19  action.  *Newcal*, 513 F.3d at 1056.

20      **B.      The Remainder of Plaintiffs' Arguments Are Premised on Their Assumption
            that the SAFETY Act Does Not Apply**

21

22      MGM filed this suit to obtain a declaration that the SAFETY Act applies.  MGM filed suit

23  in federal court because the SAFETY Act provides for *exclusive* federal jurisdiction over all

24  claims arising from an act of mass violence at an event where DHS-certified services were

25  deployed.  The Route 91 Festival clearly was such an event.  In their motion, Plaintiffs do not

26  challenge that the SAFETY Act applies, an apparent concession that, on the facts pled, it does

27  apply.  Instead, Plaintiffs note their intent "to file briefing specifically with regard to this

28  [SAFETY Act] issue at a later date."  (ECF No. 428, p. 6, n. 3.)  Plaintiffs then proceed, however,

1   to make a number of arguments that *assume* the SAFETY Act does not apply.  That cannot be.  It

2   cannot be the case that MGM adequately pleads facts showing exclusive federal jurisdiction, and

3   Plaintiffs can then ask the Court to assume – without evidence or analysis – that their claims could

4   and should be litigated in state court.  Each of Plaintiffs' arguments fails because it does not

5   address the exclusive jurisdiction created by the SAFETY Act.

6             **1.**   ***Brillhart* Abstention Cannot Apply When Congress Has Vested Federal Courts With Exclusive Jurisdiction Over a Claim**

7

8         Defendants argue that, even if a case or controversy exists between the parties, the Court

9   should nevertheless decline to exercise jurisdiction because this action would interfere with state

10  court proceedings.  The argument is contrary to Congress's determination in the SAFETY Act,

11  which vests federal courts with "original and exclusive jurisdiction over all actions" arising under

12  the Act.

13        The federal courts have no discretion to defer to state courts on matters of exclusive federal

14  jurisdiction.  *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ("[F]ederal courts

15  have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."); *Aetna*

16  *Health Inc. v.* Davila, 542 U.S. 200, 217 (2004) (federal jurisdiction proper under ERISA even

17  though complaint stated only "state law" claims because of "congressional intent to create *an*

18  *exclusive federal remedy*") (emphasis added); *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d. 858,

19  861–62 (9th Cir. 2003) (when Congress creates an exclusive federal remedy "any claim

20  purportedly based on that preempted state law is considered, from its inception, a federal claim,

21  and therefore arises under federal law"); *England v. La. Bd. of Med. Examiners*, 375 U.S. 411, 415

22  (1964) ("When a federal court is properly appealed to in a case over which it has by law

23  jurisdiction, it is its duty to take such jurisdiction." (internal quotations and citation omitted));

24  *Cohens v. Virginia*, 19 U.S. 234, 404 (1821) (federal courts "have no more right to decline the

25  exercise of jurisdiction which is given, than to usurp that which is not").

26        Indeed, courts have recognized that there is no basis under *Brillhart* to abstain from

27  deciding declaratory judgment claims that raise issues over which federal courts have exclusive

28  jurisdiction.  As one court explained in declining to dismiss a declaratory judgment action seeking

MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT SEEKING DECLARATORY RELIEF

1  a declaration of inventorship of certain patents, an area of exclusive federal jurisdiction, "because

2  the issue arises under federal law and cannot be resolved in the state court proceeding, *Brillhart*

3  abstention is not available." *Sabre Oxidation Techs., Inc. v. Ondeo Nalco Energy Servs. LP.*, No.

4  Civ.A. H-04-3115, 2005 WL 2171897, at *4 (S.D. Tex. Sept. 6, 2005); *see also E.g. Carlin*

5  *Equities Corp. v. Offman*, No. 07 civ. 359(SHS), 2007 WL 2388909, at *4 (S.D.N.Y. Aug. 21,

6  2007) (declining to abstain from deciding declaratory judgment action seeking declaration of non-

7  liability under Securities Exchange Act).  This approach is entirely consistent with the Supreme

8  Court's instruction that, before abstaining from deciding a declaratory judgment action, courts

9  must consider "whether the claims of all parties in interest can satisfactorily be adjudicated in [the

10  state-court] proceeding." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995) (*quoting Brillhart*

11  *v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).  ***Defendants do not challenge, in this***

12  ***motion, that the SAFETY Act applies***.  Because jurisdiction over SAFETY Act claims is

13  *exclusively federal*, the issues presented by MGM plainly cannot be satisfactorily adjudicated in

14  state court.

**2.  Even if *Brillhart* Abstention Applied, the Pertinent Factors Weigh in Favor of Exercising Jurisdiction**

17  Defendants urge the Court to abstain from deciding the declaratory judgment claim under

18  the factors articulated by the Supreme Court in *Brillhart v. Excess Ins. Co. of America*, 316 U.S.

19  491 (1942).  *Brillhart* considered whether a declaratory relief action would (1) require the needless

20  determination of state law issues, (2) encourage forum shopping or (3) needlessly cause

21  duplicative litigation.  *Id.*  The *Brillhart* factors uniformly *support* the exercise of jurisdiction here.

*(a)  This Action Will Not Require the Court to Rule on Novel or Unsettled Questions of State Law*

24  Defendants contend that this action will require the *needless* determination of "novel or

25  unsettled" state-law issues.  That is incorrect as a matter of law:  the state law issues here are

26  neither needless for a federal court to decide, nor are they novel or unsettled.

27  As noted above, the SAFETY Act gives the Federal Courts "exclusive" jurisdiction over

28  all actions and any claims arising out of or relating to an act of mass violence where services

MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT SEEKING DECLARATORY RELIEF

1  certified by the Department of Homeland Security were deployed and the claim may result in loss

2  to the provider of those services.  6 U.S.C. § 442(a)(1).  It does not matter whether such actions or

3  claims include state law issues; they are, regardless, subject to exclusive federal jurisdiction.

4        Moreover, Congress created an exclusive cause of action for such claims, and it

5  specifically provided that the law informing such claims would be drawn from state *law*:

6        There shall exist a Federal cause of action for claims arising out of,
       relating to, or resulting from an act of terrorism when qualified anti-
7        terrorism technologies have been deployed in defense against or
       response or recovery from such act and such claims result or may
8        result in loss to the Seller.  The substantive law for decision in any
       such action shall be derived *from the law,* including choice of law
9        principles, *of the State in which such acts of terrorism occurred* . . . .

10  6 U.S.C. § 442(a)(1).

11        The consideration of state-law issues by the federal court is therefore not a "needless"

12  abuse of comity, but rather an *intentional and essential feature* of the SAFETY Act.  Congress

13  decided that is how these cases should be handled; by providing *exclusive* Federal jurisdiction for

14  all such actions and any such claim, Congress provided that state courts have no jurisdiction to

15  decide the issues now before this Court.

16        Moreover, the state law issues incorporated through the Federal cause of action – the same

17  state law issues which inform Defendants' purported state law claims – are neither novel nor

18  unsettled.  Instead, under well-worn principles of duty and causation, it is clear that MGM is not

19  liable for the criminal acts of Paddock.  What is novel is Defendants' attempt to hold property

20  owners and operators responsible for the acts of an intentional malevolent mass killer – something

21  the state courts have repeatedly refused to do.  *See, e.g.*, *Lopez v. McDonald's Corp.*, 193 Cal.

22  App. 3d 495, 509 (1987) (finding "the unforeseeability of the unique, horrific" attack at a

23  McDonald's that killed 11 and injured 21 more "require[d] negligence liability to be restricted.");

24  *Wiener v. Southcoast Childcare Ctrs., Inc.*, 32 Cal. 4th 1138, 1143 (2004) (holding as a matter of

25  law that a child care center had no duty of care to the victims of an attack in which a man

26  "intentionally drove his large Cadillac Coupe de Ville through the fence, onto the playground, and

27  into a group of children"); *Romero v. Giant Stop-N-Go of N.M., Inc.*, 212 P.3d 408, 411 (N.M. Ct.

28  App. 2009) (holding that "a sudden, deliberate and targeted shooting" is unforeseeable as a matter

12

1   of law); *Commonwealth v. Peterson*, 749 S.E.2d 307, 312 (Va. 2013) (finding a university, like a

2   common carrier, was not "expected to guard and protect . . . against a crime so horrid, and happily

3   so rare, as that of murder").

4        It is simply not true that declaratory relief is improper any time a question of state law

5   arises, as Defendants suggest.  *See Keown v. Tudor Ins. Co.*, 621 F. Supp. 2d 1025, 1031 (D. Haw.

6   2008).  Rather, this "state law" factor is designed to prevent a federal court from intruding

7   *unnecessarily* into state law when Congress intended no such result – such as deciding an area of

8   law that Congress has specifically reserved to the states, or treading new legal ground in an area of

9   state law when there is "no compelling federal interest," as in a diversity action.  *See id.*; *Md. Cas.*

10  *Co. v. Witherspoon*, 993 F. Supp. 2d 1178, 1183 (C.D. Cal. 2014).  Here, by contrast, Congress

11  determined that there is a compelling national interest in taking *all actions* and *any claim* arising

12  from such an event and requiring that it be litigated exclusively in federal court – even though

13  state law, under the Act, provides much of the substantive law for decision.

14          (b)      *The Court Has "Original and Exclusive Jurisdiction" Over MGM's*
                     *Claims, thus Precluding Any Claim of Forum Shopping*
15

16       Defendants next argue that the Court should decline to exercise jurisdiction over this action

17  because MGM impermissibly "forum shopped" by choosing a *federal* forum.

18       This argument is, again, contrary to law.  MGM has brought these actions in federal court

19  because Congress determined that they belong *exclusively* in federal court.  Congress provided that

20  actions arising from acts of mass violence where DHS-certified services had been used are to be

21  litigated exclusively in federal court.  6 U.S.C. § 442(a)(2) (granting federal courts "***original and***

22  ***exclusive jurisdiction*** over all actions . . . arising out of, relating to, or resulting from an act of

23  terrorism when qualified anti-terrorism technologies . . . have been deployed in defense against . . .

24  such act . . . .").  The cases are in federal court because they cannot be heard anywhere else.

25  Defendants fail to confront this grant of exclusive federal of jurisdiction – and they cannot urge

26  that the SAFETY Act issues should be decided in state court.

27       Moreover, Defendants misapprehend this factor in the *Brillhart* test, which is designed to

28  prevent a party from seeking an unnecessary federal-court adjudication of a state law issue –

MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT SEEKING DECLARATORY RELIEF

particularly where a state-law action is already pending.  *Great Am. Ins. Co. v. Berl*, No. CV 17-03767 SJO, 2017 WL 7667243, at *5 (C.D. Cal. Oct. 23, 2017) ("The Ninth Circuit has characterized forum shopping as when a party files a federal declaratory judgment suit 'to see if it might fare better in federal court at the same time the insurer is engaged in a state court action . . . .'") (quoting *Am. Cas. Co. of Reading, Penn. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999); *cf. Medical Assur. Co., Inc. v. Hellman*, 610 F3d 371, 379–80 (7th Cir. 2010) (declaratory relief is proper to the extent the factual issues in the federal lawsuit are distinct from those being litigated in the underlying liability action).

Here, there is and can be no state court proceeding, because Congress provided exclusive jurisdiction over these actions in the federal courts.  Indeed, the SAFETY Act's legislative history indicates one purpose of the Act was to *avoid* venue shopping and consolidate actions in federal court.  148 Cong. Rec. 14,982 (2002) (Rep. Armey); *see supra* Section II(B).

(c)      *Exercising Jurisdiction Will Promote Judicial Economy*

Defendants finally argue that permitting this action to proceed will result in *duplicative* litigation, as MGM has sought declaratory relief (against other parties) in other federal courts, too. The argument is ironic if not disingenuous:  It was Defendants who opposed MGM's motion before the MDL panel to consolidate all the actions in a single court.  And the actions were filed in multiple federal courts simply because that was where jurisdiction lay over the individuals who had threatened suit against MGM.  (As Defendants know, an action involving one claimant does not generally bind another.)  In any event, Defendants again misapprehend the *Brillhart* test.

The *Brillhart* factor for duplicative litigation concerns a federal declaratory relief action filed during the pendency of identical, or nearly identical, *state-court actions*.  *See Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) ("If there are *parallel state court proceedings* involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court."); *see also Brillhart*, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where *another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties*").

14

1   *Brillhart* itself shows all that is wrong with Defendants' argument.  There, the Supreme

2   Court noted the presence of (1) duplicative *state* court proceedings, (2) between the *same parties*,

3   (3) presenting the same issues, which were *not governed by federal law.  Id*.  In other words,

4   *Brillhart*, on the basis of comity and efficiency, indicates that a federal court may defer to a state

5   court in a particular case where the state court is well suited (or often better suited) to decide the

6   issues.  Here, there are no state court proceedings; there are no proceedings between the same

7   parties; and the issues in the other federal-court proceedings *are governed by Federal law, as is*

8   *this action.*  There is simply no basis for an abstention-based dismissal.

9     The existence of other federal declaratory relief actions against *different* parties cannot be a

10  basis to dismiss this lawsuit.  Those actions were filed in the states where those parties reside.  If

11  those actions should be transferred – a matter not before the Court on this motion – they must be

12  transferred to California, the exclusive jurisdiction to which the Route 91 Ticketholders agreed.

13  (Kristovich Decl. ¶ 15, Ex. 7.)  But nothing in *Brillhart* or its progeny suggests this Court should

14  abstain from deciding this case because MGM has filed similar actions against other parties in

15  different venues.

16        *(d)  Additional Factors Likewise Weigh in Favor of Jurisdiction*

17    The Ninth Circuit has set forth additional factors to be considered in determining whether

18  to entertain an action for declaratory relief.  *Am. States Ins. Co.*, 15 F.3d at 145; *Dizol*, 133 F.3d at

19  1225 n.5.  These factors include: whether the declaratory action will settle all aspects of the

20  controversy; whether the declaratory action will serve a useful purpose in clarifying the legal

21  relations in issue; whether the declaratory action is being sought merely for the purposes of

22  procedural fencing or to obtain a "*res judicata* advantage"; or whether the use of a declaratory

23  action will result in entanglement between the federal and state court systems.  *Id*.  Each of these

24  factors favors the Court's jurisdiction in this case.

25    *First*, declaratory relief will settle all aspects of the controversy between MGM and

26  Defendants.  MGM is not liable to Defendants under the SAFETY Act, which provides the

27  exclusive claim arising from or relating to such an event. The declaration MGM seeks would settle

28  the legal relations between the parties.  This factor therefore weighs in favor of jurisdiction.

MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT SEEKING DECLARATORY RELIEF

1    *Second*, declaratory relief would indisputably serve an important purpose of clarifying the

2    relations between MGM and the parties, namely whether the federal SAFETY Act governs and

3    permits the imposition of liability against MGM arising from or relating to Paddock's attack. Such

4    a judgment by this court will "clarify and settle the central legal and factual issues."  The SAFETY

5    Act has never been construed by any court, and thus this Court's pronouncement will vindicate a

6    fundamental purpose of the Declaratory Judgment Act.  *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977

7    F.2d 734, 737 (2d Cir. 1992); *see also Bitter*, 2014 WL 1411219, at *6 (finding a declaratory

8    judgment action proper where "a judicial declaration would serve a useful purpose in clarifying

9    the legal relations at issue").  This factor, too, favors the Court's exercise of jurisdiction.

10    *Third*, MGM has not brought the instant action to obtain a "*res judicata* advantage" against

11    Defendants.  As noted above, Defendants sued MGM *first*, sometimes repeatedly, only to dismiss

12    their claims *en masse*, leaving a metaphorical Sword of Damocles hanging over MGM's head.

13    MGM did not bring this action for strategic advantage.  MGM named individuals who brought suit

14    and threatened suit, and MGM did so *in their home states*, where there is unquestionably personal

15    jurisdiction.  MGM did so to resolve finally and dispositively Defendants' claims in the federal

16    courts, the only courts authorized to decide such claims.  *Bitter*, 2014 WL 1411219, at *6

17    ("[Defendant] cannot threaten [plaintiff] with a lawsuit, argue that it needs more time to develop

18    evidence, refuse to say whether or not the dispute is resolved, and then avoid declaratory relief.").

19    This factor likewise favors the Court's jurisdiction here.

20    *Fourth*, for all the reasons noted above, this action will not result in any entanglement

21    between the federal and state court systems.  Congress has created a *federal* cause of action and

22    given the *federal* courts "original and exclusive jurisdiction over all actions for any claim for loss

23    of property, personal injury, or death" arising from terrorist acts where certified technologies or

24    services are deployed, such as the security services provided by CSC.  6 U.S.C. § 442(a)(2).

25    In sum, *all* relevant factors articulated by the Supreme Court and Ninth Circuit favor the

26    Court's exercise of jurisdiction over this case.  Defendants' Motion should be denied.

27

28

MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT SEEKING DECLARATORY RELIEF

3. **There Is Nothing Unfair About MGM Seeking Declaratory Relief in Federal Court Where Congress Granted Federal Courts "Original and Exclusive Jurisdiction" over Such Claims**

Defendants finally argue that it would be unfair for this Court to grant declaratory relief to MGM because they assert state-law claims against MGM for personal injury.

Defendants principally rely on *Cunningham Brothers, Inc. v. Bail*, 407 F.2d 1165 (7th Cir. 1969.) There, the court dismissed a declaratory relief action brought by a personal-injury tortfeasor seeking adjudication of various state-law affirmative defenses. *Id.* The court noted that to permit declaratory adjudication of these state law claims "would be to allow a substitute for the traditional procedures for adjudicating negligence cases." *Id.* at 1168; *see also Himonic, LLC v. Ting Pong Chow*, Case No. 2:17-cv-03023-MMD-NJK, ECF No. 15 (D. Nev. Aug. 6, 2018) (dismissing a tortfeasor's action for declaratory relief under *Cunningham* where it would deprive the defendant of his choice of forum).

MGM's declaratory judgment claim does not implicate the concerns of *Cunningham*. It is Congress that has displaced the traditional procedures for adjudicating negligence actions in these particular circumstances – *i.e.*, all actions and any claim for injury arising from or relating to an act of mass violence where DHS-certified services were deployed.

It is Congress that decided potential claimants would *not* have their traditional choice of a state law claims or a state forum. 6 U.S.C. § 442(a)(2); 6 C.F.R. § 25.7(d). Instead, Congress made clear that in the event of such a tragedy, it intended to "provide a consolidation of claims *in Federal court*," and that potential claimants could *not* bring actions under state law in state court. 148 Cong. Rec. 14,982 (2002) (Rep. Armey) (emphasis added); 6 U.S.C. § 442(a)(1); 6 C.F.R. § 25.7(d). *Congress* made the determination to substitute for the traditional negligence case a set of procedures governed by federal law in a federal forum:

Senator Hatch explained Congress' rationale for enacting a set of federal rules and procedures under the SAFETY Act:

> Often these types of lawsuits become less about culpability and more about the trial bar extorting huge settlements based on emotions that run high in the aftermath of a tragedy. …

MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT SEEKING DECLARATORY RELIEF

We must provide some stability to the legal process, especially in the context of terrorist attacks to ensure that private-sector resources are available for our homeland defense and that plaintiffs are compensated for their actual damages.

148 Cong. Rec. 22,957 (2002).

Defendants' contention that MGM is seeking a declaration of an "affirmative defense" under state law is doubly incorrect. The SAFETY Act is obviously a matter of also federal law. Moreover, complete preemption, dictated by Congress here, "differs from defensive preemption because it is jurisdictional in nature rather than an affirmative defense." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009). Here, as in cases governed by ERISA, "Allowing [Defendants] to proceed with their state-law suits would 'pose an obstacle to the purposes and objectives of Congress.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 217 (2004) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987)).

Finally, *Cunningham*'s statement that the declaratory judgment action there interfered with the plaintiffs' ability to choose the timing of their suit has little relevance here. Many Defendants here already sued MGM, but then dismissed their suits without prejudice. None of the Defendants have taken the opportunity to disavow their intent to re-file claims imminently. Applying Congress's stated intent – to consolidate these cases in federal court – is the best way to get the cases resolved. Nothing in *Cunningham* dictates dismissal in this circumstance.

In short, unlike *Cunningham*, MGM is asking for a declaration of its rights under *federal* law, namely, that the SAFETY Act precludes liability to Defendants arising from the Paddock's mass attack. Congress created a federal cause of action for such claims, granted the federal courts "original and exclusive" jurisdiction and did to in order to "provide a consolidation of claims in Federal court to stop venue shopping." 6 U.S.C. § 442(a)(2); 148 Cong. Rec. 14,982 (2002) (Rep. Armey). *Cunningham* itself recognized that "non-liability may be declared in appropriate cases." 407 F.2d at 1168 n.2; *see also United Ins. Co. of Am. v. Harris*, 939 F. Supp. 1527, 1532 (D. Ala. 1996) ("[I]t cannot be overlooked that there is no outright prohibition in the Declaratory Judgment Act against the hearing of tort actions."). Congress' clear directive that Defendants' claims be adjudicated in federal court under the SAFETY Act makes this just such a case.

18

**C.**   **Should the Court Find MGM's Complaint Fails to Establish Subject-Matter Jurisdiction, MGM Requests Leave to Amend to Cure Any Deficiency**

For all the reasons noted above, the Court should deny the motion.  Should the Court conclude otherwise, however, MGM respectfully asks for leave to amend to cure any deficiencies in its Complaint identified by the Court.  *See Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996), *overruled on other grounds*, *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007).

**V.**   **CONCLUSION**

For the foregoing reasons, MGM respectfully asks the Court to deny Defendants' Motion in its entirety.

DATED:  October 26, 2018                    MUNGER, TOLLES & OLSON LLP


                                            By:      */s/  Michael R. Doyen*
                                                 MICHAEL R. DOYEN

                                            Attorneys for MGM Defendants

19

MGM'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT SEEKING DECLARATORY RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Los Angeles, California, this 26th day of October, 2018.

*/s/ Michael Lamb*

Michael Lamb